**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN JAMES NEELY,** | : | **CIVIL ACTION NO. 3:16-CV-1565** |
| | : | |
| **Petitioner** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **MARK GARMEN and PA STATE** | : | |
| **ATTORNEY GENERAL,** | : | |
| | : | |
| **Respondents** | : | |

## MEMORANDUM

Petitioner Kevin James Neely ("Neely") filed the instant application for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2010 conviction and

sentence in the Court of Common Pleas of Dauphin County, Pennsylvania. (Doc. 1).

We will deny Neely's petition.

## I. Factual Background

The Superior Court of Pennsylvania summarized the factual background of

this case as follows:

> In the early morning hours of December 18, 2009, the
> victim [Brian Coleman] was working as a "bouncer" at a
> Harrisburg area nightclub. [Coleman] observed an
> altercation between [Neely] and another person and
> attempted to remove them from the club. After initial
> success in separating [Neely] and the man with whom he
> had been fighting, [Coleman] was obliged to go outside
> the club and break them up again because [Neely] was
> "killing that little guy." In the interim, four of [Neely]'s
> associates had arrived by car and joined [Neely] in
> "pounding" the other person. When [Coleman] attempted
> to restrain [Neely, Neely] and his cohorts all assaulted
> [Coleman]. [Neely] pistol whipped [Coleman] then
> followed him to where [Coleman] had withdrawn and shot
> him in the stomach at point blank range.

<u>Commonwealth v. Neely</u>, No. 1044 MDA 2011, 55 A.3d 130 (Pa. Super. Ct. July 10, 2012) (table) (quoting <u>Commonwealth v. Neely</u>, No. CP-22-CR-1329-2010, 2011 WL 10135779 (Pa. Ct. Com. Pl. Dauphin Cty. Oct. 13, 2011)).

## II.    <u>Procedural History</u>[1]

Neely was charged by information with attempted murder causing serious bodily injury, aggravated assault, persons not to possess a firearm, carrying a firearm without a license, and recklessly endangering another person.  <u>Id.</u> at 1; (Doc. 23 at 24).  Following a three-day jury trial, Neely was convicted on all counts except reckless endangerment, which the Commonwealth had withdrawn before submitting the case to the jury.  <u>Neely</u>, No. 1044 MDA 2011 at 2.  On December 17, 2010, Neely was sentenced to an aggregate term of 25 to 50 years' imprisonment, consisting of 240 to 480 months for attempted murder; 108 to 216 months for aggravated assault, to run concurrent with the attempted murder sentence; 60 to 120 months for persons not to possess a firearm, to run consecutive to the attempted murder sentence; 42 to 84 months for carrying a firearm without a license, to run concurrent with the sentence for persons not to possess; and 12 to 24 months for recklessly endangering another person, to run concurrent with the sentence for carrying a firearm without a license.  <u>Id.</u>

---

[1] Citations to the transcript of Neely's October 2010 trial are abbreviated herein as "Trial Tr. __."  Citations to the December 2010 sentencing hearing are abbreviated as "Sent. Tr. __."

Neely appealed his convictions and sentence, alleging five trial court errors. Id. at 3. Neely challenged the sufficiency and weight of the evidence on all counts except reckless endangerment. Id. He also asserted that the trial court had erred by imposing a sentence on the aggravated assault conviction, arguing that aggravated assault merges at sentencing with attempted murder. Id. Neely likewise questioned the imposition of a sentence for reckless endangerment, a charge that had been withdrawn by the Commonwealth. Id. Lastly, Neely argued that the aggregate sentence imposed was "manifestly excessive and unreasonable." Id.

The Superior Court of Pennsylvania affirmed the trial court on all issues except Neely's challenge to the reckless endangerment sentence, which both the trial court and the Commonwealth conceded was improper. Id. at 10-11. The court vacated the reckless endangerment sentence but found no need for remand. Id. at 11 & n.6. The panel explained that because the sentence for reckless endangerment was run concurrently with Neely's sentence for carrying a firearm without a license, vacating the reckless endangerment sentence would "not upset the trial court's overall sentencing scheme." Id. at 11 n.6.

Neely timely filed a *pro se* petition for collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. § 9541 *et seq.*, Pennsylvania's corollary to federal habeas corpus relief. (See Doc. 15-1 at 2-23). Neely alleged a violation of Brady v. Maryland, 373 U.S. 83 (1963), by the Commonwealth for failing to disclose exculpatory evidence, ineffective assistance of counsel during trial, and ineffective assistance of counsel at sentencing. (Doc. 15-1 at 3). PCRA counsel was

appointed but subsequently filed a petition to withdraw, asserting that none of Neely's post-convictions claims had merit. (See id. at 26-28). Due to clerical error, this "no-merit" letter was not attached to the motion to withdraw but was filed separately the following month. (See id. at 35-42).

The PCRA court granted PCRA counsel's motion to withdraw and dismissed Neely's petition without a hearing. Commonwealth v. Neely, No. 1631 MDA 2014, 2015 WL 6750378, at *1 (Pa. Super. Ct. July 20, 2015) (nonprecedential). Neely appealed the dismissal, primarily raising issues involving PCRA counsel's withdrawal, the late-filed "no merit" letter, and related procedural errors. Id. The Superior Court rejected all of Neely's claims. Id. at *1, 4. Neely filed a petition for allowance of appeal, which the Supreme Court of Pennsylvania denied. See Commonwealth v. Neely, 140 A.3d 12 (Pa. 2016) (table).

Neely timely filed the instant Section 2254 petition, raising five claims of ineffective assistance of trial counsel. Neely acknowledges that these claims have not been presented to any state court for review. (See Doc. 16 ¶¶ 6-7). Nevertheless, he seeks to assert the unexhausted claims under the narrow exception to procedural default announced by the United States Supreme Court in Martinez v. Ryan, 566 U.S. 1 (2012). (See Doc. 1 at 11-28 ¶¶ 33-37, 53-56, 70-73, 81-84, 92-95; Doc. 16 ¶¶ 6-7). Neely's Section 2254 petition is fully briefed and ripe for disposition.

## III.    Standards of Review

### A.    Federal Habeas Corpus Review Under 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241-2254, mandates that petitioners demonstrate that they have

4

"exhausted the remedies available in the courts of the State" before seeking federal habeas relief. 28 U.S.C. § 2254(b)(1)(A). An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process," and which has been adjudicated on the merits. Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)); see also Johnson v. Williams, 568 U.S. 289, 302 (2013).

If a state prisoner has not fairly presented a claim to the state courts "but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play." Carpenter, 296 F.3d at 146 (citations omitted). Generally, if a prisoner has procedurally defaulted on a claim by failing to raise it in state-court proceedings, a federal habeas court will not review the merits of the claim, even one that implicates constitutional concerns. Martinez, 566 U.S. at 9 (citing Coleman v. Thompson, 501 U.S. 722, 747-48 (1991); Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977)). A few limited exceptions to this rule exist.

One exception is that "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Id. at 10 (citing Coleman, 501 U.S. at 750). "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 565 U.S. 266, 280 (2012) (alterations in original) (citations and internal quotation marks omitted). To establish prejudice, a petitioner must show not merely that there were errors that created a possibility of prejudice, but

that they "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Holland v. Horn, 519 F.3d 107, 112 (3d Cir. 2008) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). If cause and prejudice are established, the federal court reviews the claim *de novo* "because the state court did not consider the claim on the merits." Bey v. Superintendent Greene SCI, 856 F.3d 230, 236 (3d Cir. 2017), *cert.* denied *sub nom.* Gilmore v. Bey, 138 S. Ct. 740 (2018) (mem.) (citation omitted).

Another rare exception that will excuse a procedural default is if the petitioner can show that "failure to consider the claim will result in a fundamental 'miscarriage of justice.'" Carpenter, 296 F.3d at 146 (quoting Coleman, 501 U.S. at 750). To satisfy the "fundamental miscarriage of justice" exception, a petitioner typically will have to show actual innocence. Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007) (citation omitted).

### B.     Ineffective Assistance of Counsel

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on such a claim, a defendant must demonstrate that (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial. See id. at 687-88. The defendant bears the burden of proving both prongs. See id. at 687. Bald assertions and conclusory allegations are insufficient to entitle a defendant to federal habeas relief based on ineffective assistance of counsel. See Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir. 2010).

To determine whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be highly deferential toward counsel's conduct. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90).

To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

## IV.    Discussion

As noted, Neely contends that the narrow exception created by Martinez applies and excuses procedural default of his Section 2254 claims. In Coleman v. Thompson, the Supreme Court held that ineffectiveness of post-conviction counsel does not qualify as "cause" to excuse procedural default that occurs in those proceedings, as there is "no constitutional right to an attorney in state post-conviction proceedings." Coleman, 501 U.S. at 752; see also 28 U.S.C. § 2254(i). In Martinez, however, the Court provided a narrow exception to this rule, holding that

> [w]here, under state law, claims of ineffective assistance
> of trial counsel must be raised in an initial-review
> collateral proceeding, a procedural default will not bar a
> federal habeas court from hearing a substantial claim of
> ineffective assistance at trial if, in the initial-review
> collateral proceeding . . . counsel in that proceeding was
> ineffective.

Martinez, 566 U.S. at 17.  The Commonwealth of Pennsylvania has a bright-line rule requiring ineffective-assistance-of-counsel claims to be raised on collateral review. See Cox v. Horn, 757 F.3d 113, 124 n.8 (3d Cir. 2014) (citing Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002)).  Under Martinez, "counsel's failure to raise an ineffective assistance [of trial counsel] claim on collateral review may excuse a procedural default if: (1) collateral attack counsel's failure itself constituted ineffective assistance of counsel under Strickland, and (2) the underlying ineffective assistance claim is a substantial one." Bey, 856 F.3d at 237-38.

Accordingly, in the case *sub judice*, ineffectiveness of initial-review PCRA counsel can qualify as "cause" to excuse a procedural default of a claim of ineffective assistance of trial counsel, so long as that defaulted claim is substantial. A "substantial" claim is one that "has some merit."  Martinez, 566 U.S. at 14. Notably, the Supreme Court of the United States has explicitly rejected the extension of the Martinez exception to underlying claims of ineffective assistance of direct-appeal counsel.  Davila v. Davis, 582 U.S. __, 137 S. Ct. 2058, 2065 (2017).

Neely raises five unexhausted claims of ineffective assistance of trial counsel. We will conduct the required Martinez analysis regarding each of these claims to determine if procedural default may be excused.  Only if Neely satisfies the strict requirements of Martinez will we reach the merits of his habeas claims.

## A.    Ground 1 – Attempted Murder Instruction

Neely first asserts that his trial counsel was ineffective for failing to object to the court's jury instructions on attempted murder.  He contends that the trial court improperly omitted the statutory definition of "intentional killing" provided by 18 PA. CONS. STAT. § 2502(d) as it relates to first-degree murder under Section 2502(a).  According to Neely, it was error for the trial court to exclude the "willful, deliberate and premeditated" portion of the definition of "intentional killing" from the instructions on attempted murder.  (Doc. 1 at 3-8 ¶¶ 1-19).  Neely likewise argues that the trial court's failure to discuss "malice" was a fundamental defect in the jury instructions.  (Id.)

We begin by setting forth the relevant portions of the trial court's attempted murder instruction:

> The defendant has been charged with attempted murder. To find the defendant guilty, you must find the following elements have been proven beyond a reasonable doubt. First, that the defendant did a certain act, that he shot Brian Coleman.  *Second, that at the time of this act, the defendant had the specific intent to kill Brian Coleman, that is he had a fully formed intent to kill and was conscious of his own intention.*  And third . . . that the act constituted a substantial step toward the commission of the killing the defendant intended to bring about.
>
> . . . .
>
> Also, you may consider the fact that there was a deadly weapon, a firearm, used against a vital part of another person's body.  That alone is sufficient to raise an inference that there was an intent to kill. So, you may consider that as well.

(Trial Tr. 409:17-410:6, 411:2-7 (emphasis added)).

As to Neely's first claim in ground 1, the trial court did not err in its instruction regarding the *mens rea* for attempted murder by omitting "willful, deliberate and premeditated." Attempted murder "is defined by reading the attempt statute, 18 Pa.C.S. § 901(a), in conjunction with the [first-degree] murder statute, 18 Pa.C.S. § 2502(a)." Commonwealth v. Anderson, 650 A.2d 20, 23 (Pa. 1994). Thus, a "conviction for attempted murder requires the Commonwealth to prove beyond a reasonable doubt that the defendant had the specific intent to kill and took a substantial step towards that goal." Commonwealth v. Blakeney, 946 A.2d 645, 652 (Pa. 2008) (citing 18 PA. CONS. STAT. §§ 901, 2502).

The trial court instructed that, to render a guilty verdict for attempted murder, the jury must find beyond a reasonable doubt, *inter alia*, that Neely "had the specific intent to kill" the victim. (Trial Tr. 409:18-24). The court then further defined "specific intent to kill" as possessing "a fully formed intent to kill and [being] conscious of" that intention. (Id. at 409:24-410:1). The Supreme Court of Pennsylvania has explained that the phrase "specific intent to kill" was developed by Pennsylvania courts to express the mental state characterizing the intent that "accompanies a killing which was willful, deliberate and premeditated," as required by the state's first-degree murder statute. Commonwealth v. O'Searo, 352 A.2d 30, 35 & n.2 (Pa. 1976) (citing 18 PA. CONS. STAT. § 2502); see Commonwealth v. Jones, 50 A.2d 317, 319 (Pa. 1947); PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS § 15.2502A (3d ed. 2016). Moreover, "premeditation and deliberation are met whenever there is a conscious purpose to bring about death." Commonwealth v. Carter, 643 A.2d 61, 66 (Pa. 1994). Accordingly, there is no

requirement in Pennsylvania that a trial court use the talismanic incantation of "willful, deliberate and premeditated" in its first-degree murder (or attempted murder) instruction if the court properly discusses "specific intent to kill."

Neely's argument regarding the trial court's omission of a discussion of "malice" is equally unavailing. Under Pennsylvania law, malice has a specific legal meaning distinguishing criminal homicide—i.e., first-, second-, and third-degree murder—from manslaughter and justified or excused killings. See PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS § 15.2501A & subcommittee note (3d ed. 2016); see also Commonwealth v. Briggs, 12 A.3d 291, 306 n.14 (Pa. 2011); Commonwealth v. Overby, 836 A.2d 20, 24 (Pa. 2003). The term "malice," as currently used in Pennsylvania jurisprudence, implicates a different mental state required for each degree of criminal homicide; for first-degree murder, such a killing is committed with malice if the perpetrator acts with a specific intent to kill. See PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS § 15.2501A(2) & subcommittee note (3d ed. 2016); see also Overby, 836 A.2d at 24. The Superior Court of Pennsylvania has specifically held that malice is *not* an element of attempted murder. See Commonwealth v. Geathers, 847 A.2d 730, 736 (Pa. Super. Ct. 2004) (citing Commonwealth v. Williams, 730 A.2d 507, 511 (Pa. Super. Ct. 1999); Commonwealth v. Griffin, 456 A.2d 171, 177-78 (Pa. Super. Ct. 1983)); see also PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS § 12.901A.1 & subcommittee note (3d ed. 2016). In reaching this conclusion, the Geathers court reasoned that a conviction for attempted murder requires acting

with the "more culpable mental state," *viz.*, "specific intent to kill."[2] <u>Geathers</u>, 847 A.2d at 736. Consequently, the trial court's instruction concerning the *mens rea* for attempted murder was appropriate.

Neely's allegations of errors in the attempted murder instructions have no basis in law. Hence, his trial counsel was not ineffective for failing to object to these instructions, and his PCRA counsel was not ineffective for failing to allege that trial counsel performed deficiently in this regard. <u>See</u> <u>United States v. Bui</u>, 795 F.3d 363, 366-67 (3d Cir. 2015) ("[T]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." (citation omitted)). Neely cannot establish ineffective assistance of initial collateral review counsel or a substantial underlying claim of trial counsel ineffectiveness, so the <u>Martinez</u> exception does not apply to excuse Neely's procedural default of ground 1.

---

[2] We recognize the inherent tension in Pennsylvania's jurisprudence on the issue of "malice" as it relates to attempted murder. On one hand, the law states that attempted murder is defined by reading the first-degree murder statute together with the attempt statute, <u>Anderson</u>, 650 A.2d at 23, and that first-degree murder requires a mental state consisting of "malice *and* a specific intent to kill," <u>Commonwealth v. Poplawski</u>, 130 A.3d 697, 709 (Pa. 2015) (emphasis added); <u>Briggs</u>, 12 A.3d at 306 & n.14; <u>Commonwealth v. Sanchez</u>, 36 A.3d 24, 37 (Pa. 2011). The Superior Court, moreover, has unambiguously stated that "[t]he *mens rea* of [attempted murder] is . . . identical to the *mens rea* element of murder in the first degree." <u>Commonwealth v. Predmore</u>, 199 A.3d 925, 929 (Pa. Super. Ct. 2018) (*en banc*). On the other hand, the Superior Court has also explicitly held that "malice is not an element of attempted murder." <u>Commonwealth v. Cannavo</u>, 199 A.3d 1282, 1292 (Pa. Super. Ct. 2018) (citation omitted); <u>Geathers</u>, 847 A.2d at 736 (citations omitted). We resolve this tension by reading <u>Cannavo</u>, <u>Geathers</u>, and similar cases to mean that attempted murder does not necessarily omit "malice" as a required element, but rather demands the highest level of malice—specific intent to kill—and cannot be satisfied by the less culpable mental states (also referred to as "malice") that accompany second- or third-degree murder.

**B.    Ground 2 – Failure to Raise <u>Apprendi</u> Challenge to Attempted Murder Sentence**

Neely challenges the constitutionality of his attorney's conduct with respect to his sentence for attempted murder.  Neely alleges that the trial court unlawfully sentenced him on the attempted murder conviction to 240 to 480 months' imprisonment for causing "serious bodily injury" without that fact being properly submitted to the jury.  Neely maintains that this sentence violates the mandates of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and that his trial and sentencing attorneys were ineffective for failing to assert this objection.[3]

In <u>Apprendi</u>, the United States Supreme Court held that due process demands that any fact—other than a prior conviction—which "increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi</u>, 530 U.S. at 490. Pennsylvania generally provides a statutory maximum of 20 years' imprisonment for attempted murder.  <u>See</u> 18 PA. CONS. STAT. § 1102(c).  If, however, "serious bodily injury results" from the attempted murder, the maximum potential sentence doubles to 40 years.  <u>Id.</u>  Applying <u>Apprendi</u>, Pennsylvania courts have repeatedly held that the question of whether "serious bodily injury" resulted from attempted murder is one that must be answered by the jury.  <u>See</u> <u>Commonwealth v. Barnes</u>, 167 A.3d 110, 116-17 (Pa. Super. Ct. 2017) (*en banc*); <u>Commonwealth v. Johnson</u>, 910 A.2d 60, 67 (Pa. Super. Ct. 2006); <u>Commonwealth v. Reid</u>, 867 A.2d 1280, 1281 (Pa.

---

[3] Neely obtained private counsel several days before his December 17, 2010 sentencing, replacing his state-appointed trial attorney.  (<u>See</u> Sent. Tr. 3:16-24).

Super. Ct. 2005); <u>Commonwealth v. Fantauzzi</u>, No. 19 EDA 2018, 2019 WL 2226115, at *6-7 (Pa. Super. Ct. May 22, 2019) (nonprecedential).

<u>Barnes</u> and <u>Johnson</u> are particularly instructive for the instant matter. In those cases, the defendants received the enhanced penalty for attempted murder "where serious bodily injury results" but had only been charged with attempted murder generally and the juries did not render a decision on whether serious bodily injury had resulted. <u>See</u> <u>Barnes</u>, 167 A.3d at 117-18; <u>Johnson</u>, 910 A.2d at 67. The Superior Court vacated the sentences as violative of due process. <u>Barnes</u>, 167 A.3d at 121; <u>Johnson</u>, 910 A.2d at 68. Neely's circumstances differ substantially from those defendants. Neely was charged by information with attempted murder causing "serious bodily injury," specifically, "[t]he victim, Brian Coleman, suffered a gunshot to the abdomen area." (Doc. 23 at 24). Thus, Neely was on notice that the Commonwealth was pursuing attempted murder resulting in serious bodily injury, which could implicate a 40-year sentence. Neely's jury verdict form, moreover, contained a special interrogatory under the attempted murder count, to wit: "If you find the defendant guilty of Count 1 (Criminal Attempt), do you find beyond a reasonable doubt that defendant caused serious bodily injury to the victim?" (<u>Id.</u> at 23). The jury answered this interrogatory affirmatively. (<u>Id.</u>)

Neely nevertheless argues that because the trial court failed to include any discussion of serious bodily injury in its instruction on attempted murder, the special interrogatory cannot cure the constitutional infirmities of his attempted murder sentence. Neely is correct that the trial court did not discuss "serious bodily injury" as part of its attempted murder instruction. (<u>See</u> Trial Tr. 409:16-

411:7).[4]  Neely is incorrect that this omission renders his attempted murder sentence or his counsel's conduct unconstitutional.

Apprendi and its progeny seek to ensure that facts which increase a criminal defendant's maximum sentencing exposure be charged by the government and found by the jury beyond a reasonable doubt.  See, e.g., Burrage v. United States, 571 U.S. 204, 210 (2014); S. Union Co. v. United States, 567 U.S. 343, 346 (2012); Blakely v. Washington, 542 U.S. 296, 301-02 (2004); Ring v. Arizona, 536 U.S. 584, 588-89, 609 (2002).  Neely received these constitutional safeguards.  He was charged with attempted murder causing serious bodily injury and thus fully aware that a conviction could carry a 40-year maximum sentence.  Cf. Commonwealth v. Bickerstaff, 204 A.3d 988, 995-98 (Pa. Super. Ct. 2019) (finding that "surprise" special interrogatory regarding serious bodily injury in connection with attempted murder, without more, "ambushed" defendant and violated due process).  The jury instructions properly defined serious bodily injury, so the jury understood what this term meant.  Finally, the jury specifically found beyond a reasonable doubt—by answering the special interrogatory—that Neely had caused serious bodily injury during the attempted murder.  Under these circumstances, we cannot say that Neely's counsel was ineffective for failing to challenge the enhanced sentence for attempted murder.  Nor can we find that PCRA counsel was constitutionally deficient for not claiming that Neely's sentencing counsel was ineffective for failing

---

[4] The court did include a discussion, including the definition, of serious bodily injury in its aggravated assault charge.  (See id. at 412:11-16).

to assert an <u>Apprendi</u>-based due process argument.  <u>Martinez</u>, therefore, does not excuse Neely's procedural default of ground 2.

**C.    Ground 3 – Failure to Object to Hearsay**

Neely also contends that his trial counsel was ineffective for failing to object to inadmissible hearsay evidence and related jury instructions.  Neely alleges that one of the Commonwealth's witnesses—Harrisburg Police Detective Michael Savel ("Detective Savel")—improperly testified, without objection, about prejudicial out-of-court statements allegedly made by another witness, Quindell Mitchell ("Mitchell"), involving purported admissions by Neely.  Neely posits that this prejudice was compounded when the trial court instructed the jury that it could consider the inadmissible hearsay as substantive evidence.

We provide a brief background for this claim.  At the time of trial, Mitchell was 17 years old and incarcerated for suspected robbery and conspiracy to commit robbery.  (Trial Tr. 349:16-20, 350:1-6).  In June or July of 2010, Mitchell had written a letter confessing to the Coleman shooting, which eventually reached the district attorney and Neely's counsel.  (<u>Id.</u> at 351:1-354:20, 370:7-11).  On September 27, 2010, one week before Neely's trial, Mitchell was taken from prison to the police station to discuss the confession letter and provide a formal statement.  (<u>Id.</u> at 352:21-353:16).  Mitchell spoke with Detective Savel, who transcribed their conversation and had Mitchell initial and sign the resulting three-page, typed document.  (<u>Id.</u>)  Due to Mitchell's inconsistent testimony and sudden lack of memory during Neely's trial, the prosecution read Mitchell's handwritten confession letter into the record during direct examination.  (<u>Id.</u> at 355:5-356:8).  The

prosecutor then questioned Mitchell about the subsequent September 27 statement, which asserted that Mitchell's earlier confession was false and had been prompted by a desire for social status and an offer of $5,000. (Id. at 381:8-24, 382:6-8). Mitchell, however, undermined his September 27 statement by unequivocally testifying multiple times to shooting Coleman. (Id. at 364:15-18, 365:3-23, 369:5-6, 370:12-18, 373:24-375:10).[5] Mitchell also attested that during the September 27 interview, when Detective Savel had asked him whether Neely had ever confessed to shooting Coleman, Mitchell had responded negatively. (Id. at 365:1-12).

The prosecution then recalled Detective Savel, questioning him about the contents of Mitchell's September 27 signed statement and essentially reading the statement into the record. (Id. at 380:7-383:10). According to the statement, Mitchell told Detective Savel that, while in prison, Neely had asked Mitchell to write the confession letter and take the blame for shooting Coleman. (Id. at 381:8-24). In exchange, Mitchell would receive "$5,000 and basically some respect." (Id. at 382:6-8). After writing the confession letter, Mitchell had second thoughts. (Id. at 382:14-20). He decided that he could not "do all that time for something [he] didn't do," and he provided the September 27 statement retracting his prior confession. (Id.)

Detective Savel also testified on redirect to additional purported comments by Mitchell that were not memorialized in the signed statement. Detective Savel attested that, following the conclusion of the recorded interview, he commented to Mitchell that it "looks like you want to tell me something else." (Id. at 383:16-384:4).

---

[5] Mitchell had been given immunity by the Commonwealth regarding the Coleman shooting prior to Neely's trial. (See id. at 363:2-364:3).

Mitchell responded that Neely had told him "other stuff." (Id. at 384:4). Detective Savel asked Mitchell if he knew "what happened at the bar," and Mitchell allegedly replied that "[Neely] said he did it." (Id. at 384:5-6). When Detective Savel told Mitchell he wanted to get that information on record, Mitchell purportedly responded that he would refuse to sign the typed statement if that information were included, so Detective Savel did not add it to the statement. (Id. at 384:6-13).

Neely contends that his trial counsel should have objected to the additional testimony offered by Detective Savel concerning the alleged off-the-record conversation. Neely claims that those statements contained inadmissible and prejudicial hearsay. He also argues that the trial court erred by instructing the jury that it could consider this prejudicial hearsay as substantive evidence. Neely is incorrect on both accounts.

At first blush, Detective Savel's testimony that Mitchell told Detective Savel something that had been told to Mitchell by Neely appears to be double hearsay. However, the purported inculpatory statement by Neely to Mitchell is excepted from the general rule against hearsay as an "opposing party's statement." See PA. R. EVID. 803(25)(A). The out-of-court statement from Mitchell to Detective Savel, moreover, does not qualify as hearsay because it was not offered "to prove the truth of the matter asserted in the statement"—Neely's guilt. See PA. R. EVID. 801(c)(2). That statement, *per contra*, was provided to impeach Mitchell regarding his direct testimony that he had never told Detective Savel that Neely admitted shooting Coleman. See PA. R. EVID. 607, 613(b). Detective Savel's testimony thus did not

contain inadmissible hearsay, and Neely's trial counsel was not ineffective for failing to object to it.

The trial court's related instruction was also appropriate. Contrary to Neely's assertion, the court informed the jury that it could consider as substantive evidence the September 27 *signed statement* given by Mitchell to Detective Savel and read into the record. (See Trial Tr. 406:14-21). The court did not mention the alleged off-the-record conversation in this instruction. This is an accurate summation of Pennsylvania law regarding a prior inconsistent statement made by a declarant-witness (Mitchell) that "is a writing signed and adopted by the declarant." See PA. R. EVID. 803.1(1); Commonwealth v. Brown, 52 A.3d 1139, 1171 (Pa. 2012); Commonwealth v. Lively, 610 A.2d 7, 10 (Pa. 1992). Mitchell's prior signed, typewritten statement was admissible as substantive evidence and the court did not err in its instruction. Neely's trial counsel, consequently, had no basis on which to object to this instruction and cannot be found ineffective for failing to do so. See Bui, 795 F.3d at 366-67. Neely's PCRA counsel, in turn, was not deficient for failing to raise a meritless trial-counsel-ineffectiveness claim. See id. Thus, Martinez does not apply to excuse Neely's procedural default of ground 3.

**D.      Ground 4 – Failure to Raise Post-Verdict Sufficiency Challenge Based on "Two Opposing Propositions"**

Neely's fourth ground for habeas relief asserts that his trial counsel was ineffective for failing to move for post-verdict judgment of acquittal based on insufficient evidence. Neely maintains that his attorney should have argued that the government had, at best, presented evidence consistent with "two opposing

propositions" and therefore could not sustain its burden of proof on the counts of conviction. (Doc. 1 at 23 ¶¶ 74-78).

A sufficiency-of-the-evidence challenge was asserted on direct appeal, but it did not employ the specific theory Neely now raises. (See Doc. 14-2 at 34, 36-40). Neely contends that although the testimony of two of the Commonwealth's witnesses, Coleman and Lapearl Slade ("Slade"), supported the prosecution's proposition that Neely shot Coleman, the testimony of Mitchell—another Commonwealth witness—demonstrated that Mitchell was the shooter. To support his supplemental theory that the Commonwealth's evidence was consistent with "two opposing propositions" and therefore legally insufficient, Neely relies on Commonwealth v. Crompton, 682 A.2d 286 (Pa. 1996). That reliance is misplaced.

In Crompton, the Supreme Court of Pennsylvania reiterated well-settled jurisprudence that "when a party on whom the burden of proof rests, in either a civil or criminal case, offers evidence consistent with two opposing propositions, he proves neither." Crompton, 682 A.2d at 289 (quoting Commonwealth v. Woong Knee New, 47 A.2d 450, 468 (Pa. 1946)). Crompton involved inconsistent suppression-hearing testimony from a single law enforcement officer indicating that the defendant had acted in two entirely different, mutually exclusive ways. Id. at 288-89. The court concluded that because it was impossible for the defendant to have acted in accordance with the sole witness's conflicting testimony, and because the Commonwealth had offered no additional evidence to explain the inconsistency, the government had not proven either alleged action. Id. at 289.

Crompton is easily distinguished from the case *sub judice*. In Crompton, there was a single Commonwealth witness who offered irreconcilable, contradictory testimony of the defendant's purported conduct, proving neither equally reasonable action. At Neely's trial there were at least three different witnesses, two of whom implicated Neely in the shooting. The jury, as factfinder, was free to credit the testimony of Coleman and Slade and reject Mitchell's version of events. Mitchell, after all, had first confessed to the shooting, then retracted that confession a week before trial, only to confess again at trial after receiving immunity from the Commonwealth. The jury could reasonably reconcile the contradictory testimony based on its view of the witnesses' credibility, and that determination would not be "pure conjecture." See Commonwealth v. Smith, 467 A.2d 1120, 1122 (Pa. 1983); Commonwealth v. Trudell, 538 A.2d 53, 58-59 (Pa. Super. Ct. 1988). Indeed, "the mere existence of conflict in the prosecution's evidence is not fatal because the Commonwealth is not bound by everything its witnesses say and jury has the discretion in believing all, part, or none of the testimony." Smith, 467 A.2d at 1123; Commonwealth v. Manchas, 633 A.2d 618, 624 (Pa. Super Ct. 1993).

Neely's trial counsel did not act unreasonably by forgoing a post-verdict motion for judgment of acquittal based on a theory of "two opposing propositions." This theory is simply inapplicable to Neely's case. And PCRA counsel was not deficient for failing to assert an ineffectiveness claim for trial counsel's conduct in this regard. The Martinez exception therefore does not excuse Neely's procedural default of ground 4.

**E.    Ground 5 – Failure to Object to Instruction Regarding Inference of Specific Intent to Kill**

In Neely's final claim, he takes issue with another portion of the trial court's instruction regarding the *mens rea* for attempted murder.  Neely claims that it was error for the court to instruct the jury as follows: "[Y]ou may consider the fact that there was a deadly weapon, a firearm, used against a vital part of another person's body.  That alone is sufficient to raise an inference that there was an intent to kill." (Doc. 1 at 26 ¶ 85 (quoting Trial Tr. 411:2-6)).  Neely argues that this instruction impermissibly permitted the jury to find specific intent to kill "based upon the mere use of a firearm on a vital part of the body whether intentional or unintentional." (Id. ¶ 86).  As Neely posits, such an instruction allows the jury to infer specific intent to kill from *any* use of a firearm on a vital part of a person's body, even if that use were accidental or intended only to cause fear or minor harm.

The Commonwealth does not engage whatsoever with this argument, but we note that it is not frivolous.  The Pennsylvania standard jury instructions explicitly include the modifier "intentionally" when describing the use of "a deadly weapon on a vital part of the victim's body."  See PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS § 15.2502A(5) (3d ed. 2016).  In Commonwealth v. Drum, 58 Pa. 9 (Pa. 1868), the seminal case from which this now-common inferential instruction is derived, the relevant portion of the instruction given is as follows:

> If, from all the facts attending the killing, the jury can fully, reasonably, and satisfactorily infer the existence of the intention to kill, and the malice of heart with which it was done, they will be warranted in doing so.  He who

> uses upon the body of another, at some vital part, *with a manifest intention to use it upon him*, a deadly weapon, as an axe, a gun, a knife or a pistol, must, in the absence of qualifying facts, be presumed to know that his blow is likely to kill; and, knowing this, must be presumed to intend the death which is the probable and ordinary consequence of such an act. He who so uses a deadly weapon without a sufficient cause of provocation, must be presumed to do it wickedly, or from a bad heart. Therefore, he who takes the life of another with a deadly weapon, *and with a manifest design thus to use it upon him*, with sufficient time to deliberate, and fully to form the conscious purpose of killing, and without any sufficient reason or cause of extenuation, is guilty of murder in the first degree.

Drum, 58 Pa. at 17 (emphasis added). This instruction emphasizes, at two different places, that the use of the deadly weapon must be intentional.

For many years, the Supreme Court of Pennsylvania largely hued to the Drum instruction, stating that specific intent to kill may be inferred from the "intentional" or "deliberate" use of a deadly weapon on the vital part of another person's body. See, e.g., Commonwealth v. Zec, 105 A. 279, 281 (Pa. 1918) (stating maxim as "intentionally uses a deadly weapon" and noting that "whether the assailant intended to use the weapon on a vital part is a question of fact"); Commonwealth v. Blakeley, 117 A. 685, 686 (Pa. 1922) (upholding trial charge that quoted Drum and required "manifest intention to use" deadly weapon); Commonwealth v. Iacobino, 178 A. 823, 825 (Pa. 1935) ("intentional use of a deadly weapon"), abrogated on other grounds Commonwealth v. Fears, 86 A.3d 795, 821 (Pa. 2014); Jones, 50 A.2d at 319 ("deliberate use of a deadly weapon upon a vital part for a manifest purpose"), abrogated on other grounds Fears, 86 A.3d at 821; Commonwealth v. Minoff, 69 A.2d 145, 148 (Pa. 1949) (same) (citation omitted);

Commonwealth v. Ballem, 123 A.2d 728, 732 (Pa. 1956) (same) (citations omitted);

Commonwealth v. Tyrrell, 174 A.2d 852, 855 (Pa. 1961) (same) (citations omitted);

Commonwealth v. Carroll, 194 A.2d 911, 915 (Pa. 1963) ("intentional use of a deadly

weapon"); Commonwealth v. Kirkland, 195 A.2d 338, 346 (Pa. 1963) (same);

Commonwealth v. Finnie, 202 A.2d 85, 88 (Pa. 1964) (same); Commonwealth

v. Howard, 231 A.2d 860, 866 (Pa. 1967) (referencing both "deliberate use" and

"intentional use" of a deadly weapon); Commonwealth v. Eckhart, 242 A.2d 271, 272

(Pa. 1968) ("deliberate use of a deadly weapon); Commonwealth v. Commander, 260

A.2d 773, 777 (Pa. 1970) ("intentional use of a deadly weapon"); Commonwealth

v. Ewing, 264 A.2d 661, 663 (Pa. 1970) (same); Commonwealth v. Mosley, 279 A.2d

174, 177 (Pa. 1971) (same); Commonwealth v. Agie, 296 A.2d 741, 742 (Pa. 1972)

(same); Commowealth v. Alston, 317 A.2d 229, 231 (Pa. 1974) (stating rule as

"intentional use of a deadly weapon" and also rephrasing as "use of a deadly

weapon directed at a vital organ"); Commonwealth v. Murray, 334 A.2d 255, 257 (Pa.

1975) ("intentional use of a deadly weapon"); Commonwealth v. Moore, 373 A.2d

1101, 1104 (Pa. 1977) (same); Commonwealth v. Twiggs, 387 A.2d 1273, 1275 (Pa.

1978) (same); Commonwealth v. Ash, 394 A.2d 479, 482 (Pa. 1978) (same);

Commonwealth v. Glass, 405 A.2d 1236, 1240 (Pa. 1979) (same); Commonwealth

v. Bishop, 413 A.2d 1031, 1035 (Pa. 1980) ("deliberate use of a deadly weapon"

(citation omitted)); Commonwealth v. Green, 426 A.2d 614, 616-17 (Pa. 1981)

("intentional use of a deadly weapon").

    Around the mid-1970s to early 1980s, however, the Pennsylvania Supreme

Court began to omit "intentional" or "deliberate" when describing the use of a

deadly weapon on a vital part of the body.  See e.g., Commonwealth v. Petrakovich, 329 A.2d 844, 848 (Pa. 1974); Commonwealth v. Caye, 348 A.2d 136, 137, 139 (Pa. 1975); Commonwealth v. Kittreles, 350 A.2d 842, 843 (Pa. 1976); O'Searo, 352 A.2d at 36; Commonwealth v. Moore, 373 A.2d 1101, 1104 (Pa. 1977); Commonwealth v. Holzer, 398 A.2d 101, 104 (Pa. 1978); Commonwealth v. Kingsley, 391 A.2d 1027, 1032 (Pa. 1978); Commonwealth v. Meredith, 416 A.2d 481, 485 (Pa. 1980); Commonwealth v. Gardner, 416 A.2d 1007, 1008 (Pa. 1980); Commonwealth v. McAndrews, 430 A.2d 1165, 1166 (Pa. 1981); Commonwealth v. Thornton, 431 A.2d 248, 252 (Pa. 1981); Commonwealth v. Martinez, 446 A.2d 899, 901 (Pa. 1982).  The last time the Pennsylvania Supreme Court phrased the "deadly weapon on a vital part of the body" rule to require the use to be intentional or deliberate appears to be in 1981.  See Green, 426 A.2d at 616-17.[6]

After exhaustive review, we are unable to ascertain an explicitly stated rationale for the change.  There does not appear to be a case that directly addresses this truncation of the Drum instruction.  The most logical explanation is that the verb "use" connotes that the action is intentional or deliberate.  In other words, intent is presumed when a deadly weapon is *used* on a vital part of the body.  To be clear, for approximately the last four decades, the law as stated by Pennsylvania's highest court permits the inference of specific intent to kill from the "use of a deadly weapon on a vital part of the body."  Accordingly, we cannot find that

---

[6] This does not include cases in which the Pennsylvania Supreme Court directly quotes trial-court instructions that a criminal defendant challenges on appeal.

Neely's trial counsel was ineffective for failing to challenge the instruction in question. The omission of "intentional" from this instruction comports with the last two scores of Pennsylvania Supreme Court jurisprudence, including binding case law from the time of Neely's trial. <u>See</u> <u>Commonwealth v. Laird</u>, 988 A.2d 618, 626 (Pa. 2010) (citing <u>Commonwealth v. Kennedy</u>, 959 A.2d 916, 921 (Pa. 2008)); <u>Commonwealth v. Brown</u>, 982 A.2d 699, 705 (Pa. 2009) (quoting <u>Blakeney</u>, 946 A.2d at 651); <u>Commonwealth v. Smith</u>, 985 A.2d 886, 895 (Pa. 2009) (citation omitted). Neely therefore cannot excuse default of this claim because he is unable to satisfy either requirement of <u>Martinez</u>.

## V.    **Conclusion**

Neely concedes that he has procedurally defaulted the ineffective-assistance-of-trial-counsel claims raised in his Section 2254 petition.  We decline to address the merits of these claims because Neely has not established a basis to excuse his default; accordingly, we will deny Neely's petition for habeas relief.[7]  We will likewise deny a certificate of appealability, as Neely has failed to make the requisite "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(1), (2).  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     June 14, 2019

---

[7] Although we do not reach the merits of Neely's claims, our foregoing Martinez analysis necessitated a quasi-merits review of the underlying ineffectiveness claims to determine whether those claims were "substantial" and should have been raised by initial-review PCRA counsel.